IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**Pro Ag Management, Inc.**,                                  )
                                                             )
                Plaintiff,                                   )
                                                             )    **Case No. 2:26-cv-2066**
v.                                                           )
                                                             )    **JURY TRIAL DEMANDED**
**AgriSompo North America, Inc.**,                            )
Serve Registered Agent:                                      )
Registered Agents, Inc.                                      )
4601 E. Douglas Ave., Suite 150                              )
Wichita, Kansas 67218                                        )
                                                             )
**Sompo International Holdings**,                             )
Serve at:                                                    )
1221 Avenue of the Americas, Floor 18                        )
New York, New York 10020                                     )
                                                             )
**Endurance Services Limited**,                               )
Serve Registered Agent:                                      )
Registered Agents, Inc.,                                     )
117 South Lexington Street, Suite 100                        )
Harrisonville, MO 64701                                      )
                                                             )
and                                                          )
                                                             )
**Jami Wells**,                                               )
**Kayla Lindsey**,                                            )
                                                             )
             Defendants.                                     )

## VERIFIED COMPLAINT

    1.    Plaintiff Pro Ag Management, Inc. ("**ProAg**"), a crop insurer, is hemorrhaging

business after a long-tenured senior employee, Defendant Jami Wells ("**Wells**"), surreptitiously

sent a compilation of trade secrets to a competitor crop-insurance company, Defendants

AgriSompo North America, Inc., Sompo International Holdings, and Endurance Services Limited

(collectively, "**AgriSompo**").

2.    On November 18, 2025, Wells, then a ProAg employee of nearly twenty years, received a job offer from ProAg's competitor, AgriSompo. The offer letter stated that Wells would be the "**Senior Adjuster** reporting to **Kayla Lindsey, Area Claims Supervisor**." (Emphasis in original.) (Defendant Kayla Lindsey is referred to as "**Lindsey**.")

3.    AgriSompo's offer was good until November 21, 2025.

4.    Through the evening and night of November 20, 2025, Wells downloaded from the ProAg laptop provided to her hundreds of highly confidential and competitively sensitive policyholder claims files to at least one external drive (the "**Claims Files External Drive**").

5.    At 10:50 p.m. on December 11, 2025, Wells — who had not informed ProAg that she had accepted a job at AgriSompo — used her ProAg email account to email AgriSompo's Lindsey an excel spreadsheet containing trade secret information about nearly 1,000 of ProAg's policyholders, their adjusters, the years those policyholders made claims, many of the policyholders' email addresses and phone numbers. The excel spreadsheet (the "**Customer List**") has ten tabs — nine tabs listing policyholders tied to particular ProAg adjusters and a tenth tab listing all policyholders with phone numbers and email addresses.

6.    Wells last modified the Customer List on December 11, 2025 at 10:47 p.m. Three minutes later, at 10:50 p.m., Wells emailed the Customer List to Lindsey (and Wells's personal email address).

7.    Early the next morning, Lindsey quickly responded that the Customer List will "help tremendously next year":

**From:** Lindsey, Kayla <klindsey@sompo-intl.com>
**Sent:** Friday, December 12, 2025 8:06:19 AM
**To:** Wells, Jami <jwells@proag.com>
**Cc:** Jami Wells <jamirott@yahoo.com>
**Subject:** Re: Two Year Out List

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good deal! Did you create that list? I can't remember if you told me or not. That will help tremendously next year.

**Exh. A.**

8.    After Wells confirmed that she had created the Customer List, Lindsey wrote "your list will help a lot":

| | |
|---|---|
| **From:** | Lindsey, Kayla on behalf of Lindsey, Kayla <klindsey@sompo-intl.com> |
| **To:** | Wells, Jami |
| **Subject:** | Re: Two Year Out List |
| **Date:** | Friday, December 12, 2025 8:09:37 AM |

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Got it. Yes, our system does the exact same thing so your list will help a lot.

*Id.*

9.    On December 12th, during working hours while at ProAg, Wells downloaded more files from the ProAg laptop to the Claims Files External Drive.

10.    On December 15, 2025, just days after sending Lindsey the Customer List and downloading hundreds of claims files to the Claims Files External Drive, Wells put in her two weeks' notice at ProAg.

11.    According to her LinkedIn profile, Wells started working for AgriSompo in December 2025.

12.     As Lindsey predicted in her December 12th email, Wells' transfer of the Customer List to AgriSompo has indeed "help[ed] a lot." *Id.* "Tremendously" so, as AgriSompo has used the Customer List to siphon away substantial numbers of ProAg's policyholders in the last few weeks.

13.     ProAg brings this lawsuit to prevent further irreparable harm to its business, goodwill, and customer, agent, and business relationships stemming from Defendants' misappropriation of ProAg's trade secrets and their tortious interference with its contracts and business expectancies. Unless enjoined, AgriSompo will continue to use ProAg's trade secret information to irreparably decimate ProAg.

## THE PARTIES

14.     Plaintiff ProAg is a crop insurer. It is an Illinois corporation with a principal place of business in Amarillo, Texas.

15.     Defendant AgriSompo describes itself as "one of the leading writers of crop insurance in the United States" and a subsidiary of Sompo International, a global insurance conglomerate. It is a Texas corporation with a principal place of business in Lubbock, Texas. AgriSompo's headquarters are in Lenexa, Kansas, and it has a regional office in Topeka, Kansas.

16.     Sompo International Holdings is a corporation organized under the laws of Bermuda with a principal place of business at Waterloo House, 100 Pitts Bay Road, Pembroke HM 08, Bermuda.

17.     Endurance Services Limited is a wholly owned subsidiary of Sompo International Holdings. It is a Delaware corporation with a principal place of business at 4 Manhattanville Road, Purchase, New York 10577.

18.     Defendant Jami Wells is a Missouri citizen residing at 12250 NW Highway 169, Union Star, MO 64494.

19.    Defendant Kayla Lindsey is a Missouri citizen residing at 1307 Highway W., Bethel, MO 63434.

## JURISDICTION AND VENUE

20.    This action arises under the Defend Trade Secrets Act, 18 U.S.C. **§** 1836, *et seq*., as well as Kansas law. The Court has jurisdiction over ProAg's federal claim under 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c). This Court has supplemental jurisdiction over the Kansas state law claims under 28 U.S.C. § 1367.

21.    Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, namely, at AgriSompo's headquarters in Lenexa, Kansas and/or involve current and former Kansas policyholders of ProAg whom AgriSompo has poached after misappropriating ProAg's trade secrets.

22.    This Court has personal jurisdiction over AgriSompo North America because it has a substantial presence in Kansas through its headquarters in Lenexa, Kansas, and it is currently poaching ProAg's policyholders in Eastern Kansas using ProAg's trade secrets.

23.    This Court has personal jurisdiction over Endurance Services Limited because it hired Wells, and its employees are currently poaching ProAg's policyholders in Eastern Kansas using ProAg's trade secrets.

24.    This Court has personal jurisdiction over Sompo International Holdings Ltd. because Wells was offered a job pursuant to Sompo's policies and procedures, and their agents are currently poaching ProAg's policyholders in Eastern Kansas using ProAg's trade secrets.

25.    This Court has personal jurisdiction over Kayla Lindsey because Lindsey is currently poaching ProAg's policyholders in Eastern Kansas using ProAg's trade secrets.

26.     This Court has personal jurisdiction over Jami Wells because Wells is currently poaching ProAg's policyholders in Eastern Kansas using ProAg's trade secrets.

## FACTUAL ALLEGATIONS

27.     Crop insurance is a highly competitive and heavily regulated industry where privacy matters. ProAg takes extensive steps to keep their policyholders' information secret — indeed, their contract with the Federal Crop Insurance Corporation (an agency of the Department of Agriculture) ("**FCIC**") requires it.

### Crop Insurance and the Standard Reinsurance Agreement

28.     Because of the importance of the agricultural industry to the United States, the Department of Agriculture ("**USDA**") provides subsidized insurance on agricultural commodities to American farmers and ranchers delivered by private insurance carriers known as approved insurance providers ("**AIPs**"), like ProAg. The AIPs must be approved by the USDA and enter into a "Standard Reinsurance Agreement" with the FCIC. Each AIP reports vast amounts of information about their policyholders to the FCIC to assist with the uniform administration of the nationwide risk program.

29.     Because of the sensitivity of information collected by AIPs, there are federal statutes, some with criminal penalties, which require the AIPs to keep their policyholders' data strictly confidential. The requirements of these statutes are reflected in the USDA's Standard Reinsurance Agreement.

30.     A Standard Reinsurance Agreement is a contract between the FCIC and the AIP, and it governs all aspects of the administration, subsidization, and reinsurance of policies authorized by the FCIC under the federal crop insurance program that the AIP offers to individual farmers, predominantly through a network of independent insurance agents.

31.    The Standard Reinsurance Agreement mandates that AIPs, their employees, adjusters, and agents keep information about their policyholders confidential.

32.    The Standard Reinsurance Agreement defines "Protected Information" as "any Personally Identifiable Information about a policyholder, or information about the policyholder's farming operation or insurance policy, acquired from the policyholder, USDA, the Comprehensive Information Management System, or the policyholder's previous or current approved insurance provider or agent that is protected from disclosure by the Privacy Act of 1974 (5 U.S.C. § 552a), section 502(c) of the Act (7 U.S.C. § 1502(c)), or any other applicable Federal statute." **Exh. B** at 7. Protected Information "includes all hard copy or electronic information." *Id.*

33.    The Standard Reinsurance Agreement defines "Personally Identifiable Information" to mean "any information about an individual maintained by the [AIP] and its affiliates, including but not limited to, education, financial transactions, medical history, and criminal or employment history and information which can be used to distinguish or trace an individual's identity, such as name, social security number, date and place of birth, mother's maiden name, biometric records, etc., including any other personal information which is linked or linkable to an individual." *Id.* at 6.

34.    Section IV(a) of the Standard Reinsurance Agreement prohibits an AIP from "disclos[ing] to the public any information provided by the policyholder unless such disclosure is otherwise required by Federal law"; it requires all persons who have access to Protected Information and Personally Identifiable Information to "sign a non-disclosure statement"; and it mandates the AIP to "develop, implement, and maintain information controls and systems, including those pertaining to all Protected Information and records, in a manner consistent with

the Federal Information Security Management Act (FISMA) (44 U.S.C. § 3541), or any Federal law covering Federal crop insurance information." *Id.* at 29.

36. ProAg followed the requirements in its Standard Reinsurance Agreement with the FCIC by, among other things, requiring its employees who had access to Protected Information to sign a "non-disclosure statement."

36. Wells (then known as Jami Ridder) signed her Non-Disclosure Statement in 2009:



**Exh. C.**

37. Under Wells' "Individual NON-DISCLOSURE STATEMENT," she agreed to "keep private and not publish, use or disclose to another individual or entity" any Protected Information or Personally Identifiable Information; that this obligation of non-disclosure "continue[s] in perpetuity;" and that "violation of this agreement may result in civil and criminal penalties." *Id.*

### *Wells' contractual obligations to ProAg*

38. As a condition of Wells' employment with ProAg, Wells was given access to ProAg's confidential information to perform her duties. Wells knew the confidential nature of this information, that this information was the property of ProAg, and that information could not be used or disclosed without ProAg's express consent.

39.    Consistent with ProAg's policies and procedures, Wells received and acknowledged receipt of an Employee Handbook and Business Policies[1], which included the Business Confidentiality Policy (**Exh. D**), Acceptable Use Policy (**Exh. E**), and Code of Business Conduct and Ethics (**Exh. F**). Wells' latest acknowledgement of these policies occurred on August 2, 2024.

40.    The Business Confidentiality Policy prohibits the unauthorized disclosure and use of ProAg's confidential information including, but not limited to: sales or marketing techniques and policies utilized; documentation of discussions with agents, underwriters, brokers, or adjusters relating to the insurance of clients or prospective clients; methods of operation; client and customer lists, prospects lists and other information; and the identity of, and the terms and provision of any contract, agreement, trade practice, custom or other agreement between ProAg and its business partners. **Exh. D.**

41.    The Business Confidentiality Policy required that Wells: Redacted

*Id.*

42.    The Acceptable Use Policy laid out ProAg's information security protocols and requirements. Pursuant to the Acceptable Use Policy, Redacted

---

[1] ProAg's parent company is HCC Insurance Holdings, Inc. d/b/a Tokio Marine HCC. Tokio Marine HCC's Handbook and Policies apply to ProAg.



**Exh. E.**

43.     The Code of Business Conduct and Ethics summarized the standards of business conduct and expectations of employees, including an expectation that employees ███████ ████████████████████████████████████████████████████████████████████ **Exh. F.**

44.     Wells separately signed a document acknowledging receipt of ProAg's Employee Manual (**Exh. G**), which informed Wells that her ███████████████████████ ████████████████████████████ *Id.* at 6, 24.[2] Wells knew that ████ ████████████████████████████████ *Id.* at 24. The Employee Manual states that ████████████████████████████████ ████████████████████ *Id.*

45.     Wells knew that as ████████████████████████████ █████████████ and that ███████████████████████ *Id.*

46.     ProAg made it crystal clear to Wells that she would have access to ████████ ████████████████████████████████████████████████████████████ ████████████████ *Id.* at 6.[3]

---

[2] Wells' signed Receipt and Acknowledgment is attached as **Exhibit H**.

[3] In addition to acknowledging and signing documents regarding confidentiality, Wells also attended training from ProAg, including on "Data Protection" and "Legal Holds."

***Wells' role at ProAg***

47.     Wells was an employee of ProAg for nineteen years, serving as an adjuster in the Claims Department and holding the role of Senior Adjuster at the time of her departure.

48.     A crop insurance adjuster works closely with farmers to inspect farms when a claim is made. The tasks of a crop insurance adjuster include appraising damaged crops, documenting claim information, taking photos, preparing claim paperwork, and communicating with policy holders.

49.     Throughout her tenure as an adjuster for ProAg, Wells had access to and, as is clear from her downloading activity from November 20th through December 12th, retained information about claims and policyholders dating back to 2006.

***AgriSompo offers Wells a job, and she provides ProAg's trade secrets***

50.     On November 18, 2025, Wells received a job offer from AgriSompo. The offer was good until November 21st.[4] **Exh. I**.

51.     AgriSompo's offer letter stated Wells would report to Lindsey. *Id.* at 1.

52.     Acceptance of AgriSompo's offer came with a $25,000 signing bonus. *Id.* at 2.

53.     AgriSompo also offered Wells an annual incentive award "paid in cash" based on her "individual performance."

54.     AgriSompo's offer letter stated that AgriSompo had "specifically instructed you [Wells] not to copy, email, retain, bring to, disclose to or use in connection with your employment or potential employment with [AgriSompo] any confidential or proprietary information from any current or prior employer[.]" *Id.* at 3. But Wells and the other Defendants did exactly the opposite.

---

[4] One day before AgriSompo made the job offer, Wells emailed internal ProAg policies to the personal email address of Michael Epler, a claims adjuster with AgriSompo.

55.     AgriSompo's offer letter stated, "You have not brought to, given, disclosed to, or used in connection with your potential employment with [AgriSompo] any confidential or proprietary information from any prior employer[.]" *Id.* But Wells and the other Defendants did exactly the opposite.

56.     AgriSompo's offer letter stated, "You will not retain or bring to, disclose to or use in connection with your employment or potential employment with [AgriSompo] any confidential or proprietary information from any prior employer or other person or entity." *Id.* But Wells and the other Defendants did exactly the opposite.

57.     On November 20, 2025, two days after receiving AgriSompo's offer, Wells started downloading claims information from the ProAg laptop to an External Drive. Wells downloaded over a thousand files on November 20th from 3:45PM to 9:38PM.

| ComputerName | Date(CST) | TargetFileName | | UserName |
|---|---|---|---|---|
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted WO Co RP WD.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted WO Co RP.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted WO Co Corn & SB Prod.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted AL Co. Wheat.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted SB Prod WD.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted Corn & SB Prod AL Co.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted SBean Prod.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted SB Prod.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted SB RP.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted CH WD.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted Corn CH.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted SBean Prod.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted Rev Tr SBean Prod.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted Wheat WD.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted RP WD.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted SB RP.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted PP WD.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted Wheat Prod.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted RP WD.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted SBean Prod.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted SB RP WD.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted SBean RP.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted SBean Prod.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted Corn App. & WD.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted Corn Prod & WD.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted Corn Prod.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted Corn Withdrawal.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted SBean Prod.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted Corn Prod.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted Wheat CH.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted Wheat Prod.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted SB Prod.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted Wheat CH.pdf | JWELLS |
| PA-LTBWX5N64-GI | 11/20/2025 21:04 | \Device\Harddisk\Volume18\Jam\Documents\2006-2024 Claims\2008 Claims | Redacted SB RP WD.pdf | JWELLS |

58.     On December 8, 2025, while still employed at ProAg, Wells completed a Conflict of Interest form for AgriSompo, certifying she had no conflicts of interests. At this time, both Wells and AgriSompo knew Wells had a conflict of interest, as she was still working at ProAg while also downloading ProAg trade secrets to later give to AgriSompo.

59.     On December 11, 2025, at 10:47 PM, Wells modified an Excel spreadsheet that she had created. The spreadsheet — referred to as the Customer List — had ten tabs, nine for each individual ProAg current or former adjuster that worked in the same area as Wells. Each adjuster-specific tab contains a list of policyholders with which the adjuster had worked and notes whether those policyholders made claims during certain years. A tenth tab contains a list of policyholder names along with email addresses and phone numbers. In total, Wells' list contained detailed information about nearly 1,000 of ProAg's policyholders.

60.     To create the Customer List, Wells obtained ProAg's policyholders' information from ProAgWorks™, a proprietary internal policy processing system available to only authorized ProAg employees and insurance agents. Access to ProAgWorks™ requires a unique username and password as well as multi-factor authentication.

61.     Three minutes after her last modification to the Customer List, Wells emailed the Customer List to AgriSompo.

62.     Kayla Lindsey, who is now Wells's boss at AgriSompo, responded to the email that attached the Customer List, assuring Wells that the Customer List "will help tremendously next year."[5] **Exh. A.**

---

[5] Though Wells attempted to double delete her emails with Lindsey before she left the company, ProAg was able to recover them during its ongoing investigation of Wells' trade secret theft.

63.    On December 12, 2025, Wells downloaded more information to the Claims Files External Drive, ultimately downloading more than 1,500 policyholder files, with dates ranging from 2006 to 2024. These files contain highly sensitive business information about ProAg's policyholders' properties, crops, claims, and other information that is confidential and statutorily-protected.

| ComputerName | Date(CST) | TargetFileName | | UserName |
|---|---|---|---|---|
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted Corn Wind\Weather.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted Corn Wind\Signed Survey Sheet.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted Corn APH Prod\APH Appraisal.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted Corn APH Prod\Bin 1 Corn Measurement Calculator.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted Corn Wind\ProAgFieldObservation-2025-3005878.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted Corn Wind\POL.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted Corn Wind\NOL.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted Corn Wind\Corn_Loss_Survey_Sheet_Line_2.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted Corn Wind\Weather.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted SB Prod\Trailer 2.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted SB Prod\Trailer Msmt.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted Corn Wind\Corn_Loss_Survey_Sheet_Line_3.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted SB Prod\Weather.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted Corn Wind\Weather.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted Corn Wind\ProAgFieldObservation-2025-3038522.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted Corn Wind\POL.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted Corn Wind\Summary.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted SB Prod\SOI.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted SB Prod\NOL.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted Corn APH Appraisals\Withdrawal.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted SB Prod\Summary.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted SB Prod\Claim Calculator.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted Corn APH Appraisals & Bin Msmt\SB Bin Measurement Calculator.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted SB Prod\Special Report.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted SB Prod\Bartlett.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted Corn APH Appraisals & Bin Msmt\APH Appraisals.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted SB Prod\Trailer 1.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted Corn APH Appraisals & Bin Msmt\Corn Bin Measurement Calculator.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted SB Prod\CIMS.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted Corn Wind\Weather.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted SB Prod\Self Audit.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | November Voucher\Payment.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted Corn APH Appraisals\Corn APH Appraisals.pdf | JWELLS |
| PA-LTBWXSN64-GI | 12/12/2025 15:46 | \Device\HarddiskVolume5\2025 Friday onl | Redacted Corn APH Appraisals\Withdrawal.pdf | JWELLS |

64.    The Claims Files External Drive contains over 1,500 files, with dates ranging from 2006 to 2024, and includes highly private and confidential information about claims made by ProAg policyholders.

65.    AgriSompo is now in possession of the Claims Files External Drive and is actively using it to interfere with ProAg's business operations and unlawfully steal ProAg policyholders.

66.    In addition to being trade secrets, the Customer List and Claims Files External Drive are Protected Information and Personally Identifiable Information under the USDA's

Standard Reinsurance Agreement. When Wells sent the Customer List and the Claims Files External Drive to AgriSompo, she violated her Non-Disclosure Statement (as well as multiple other ProAg policies) and caused an unauthorized disclosure of Protected Information and Personally Identifiable Information under the Standard Reinsurance Agreement, which has prompted ProAg to report this conduct to the RMA and may separately impose upon Wells civil and criminal penalties.

**COUNT I**
***Temporary Restraining Order***
**(All Defendants)**

67.     ProAg incorporates by reference all allegations contained in the preceding Paragraphs, and in all other counts, as though set forth fully herein.

68.     ProAg is likely to succeed on all of its claims, including but not limited to those under the Defend Trade Secrets Act, the Kansas Uniform Trade Secret Act, and Breach of Contract.

69.     ProAg alleges detailed information and documentary evidence that Defendants misappropriated ProAg's trade secrets, and that Wells violated her Non-Disclosure Statement (and multiple other ProAg policies) by secretly downloading and emailing them to her future employer, who immediately recognized that it "will help tremendously next year [2026]."

70.      ProAg will suffer irreparable harm without injunctive relief.

71.     ProAg is bleeding customers and suffering injury to its goodwill and reputation, which will only grow more severe as the Spring Sales Closing Date of March 16, 2026 approaches, which is the deadline for farmers to select their crop insurance for the year.

72.     The balance of hardships weighs in ProAg's favor because ProAg will suffer serious harm if a Temporary Restraining Order is not granted.

73.    The public interest weighs in ProAg's favor because the public has an interest in preventing unfair competition through the misappropriation of trade secrets.

74.    A Temporary Restraining Order is necessary because Defendants' actions are causing ProAg immediate, ongoing, severe, and irreparable harm.

## COUNT II
### *Preliminary and Permanent Injunction*
### (All Defendants)

75.    ProAg incorporates by reference all allegations contained in the preceding Paragraphs, and in all other counts, as though set forth fully herein.

76.    ProAg is likely to succeed on all of its claims, including those under the Defend Trade Secrets Act, the Kansas Uniform Trade Secret Act, and Breach of Contract.

77.    ProAg alleges detailed information and documentary evidence that Defendants misappropriated ProAg's trade secrets, and that Wells violated her Non-Disclosure Statement (and multiple other ProAg policies) by secretly downloading and emailing them to her future employer, who immediately recognized that it would be of tremendous value.

78.    ProAg will suffer irreparable harm without injunctive relief.

79.    ProAg is bleeding customers and suffering injury to its goodwill and reputation, which will only grow more severe as the Spring Sales Closing Date of March 16, 2026 approaches.

80.    The balance of hardships weighs in ProAg's favor because ProAg will suffer serious harm if a Preliminary and Permanent Injunction is not granted.

81.    The public interest weighs in ProAg's favor because the public has an interest in preventing unfair competition through the misappropriation of trade secrets.

82.     A Preliminary and Permanent Injunction is necessary because Defendants will continue to misappropriate ProAg's trade secrets and ProAg will suffer irreparable harm without relief.

## COUNT III
### Misappropriation of Trade Secrets in violation of the
### Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq.
### (All Defendants)

83.     ProAg incorporates by reference all allegations contained in the preceding Paragraphs, and in all other counts, as though set forth fully herein.

84.     ProAg undertakes extensive efforts to keep Protected Information and Personally Identifiable Information of their policyholders, as well as all other information about their policyholders and claims, confidential, including developing, implementing, and maintaining information controls and systems as required by their Standard Reinsurance Agreement with the federal government.

85.     These efforts include, but are not limited to, requiring employees to sign non-disclosure statements and a business confidentiality policy. ProAg also stores policyholder information in ProAgWorks™, a proprietary internal processing system that is limited to certain authorized ProAg employees and agents, access to which requires unique usernames, passwords, and multi-factor authentication.

86.     The information contained in the Customer List and Claims Files External Drive — and the compilation of that information in a single format — derives economic value from not being readily ascertainable by ProAg's competitors.

87.     AgriSompo admitted that the Customer List was economically valuable when Lindsey, AgriSompo's Area Claims Supervisor, said it would "help tremendously" and that it "will help a lot." **Exh. A**.

88.    The Customer List and Claims Files External Drive are trade secrets under the federal Defend Trade Secrets Act.

89.    Under her Non-Disclosure Statement, company policies, and federal law, Wells did not have authority or ProAg's consent to disclose the Customer List or Claims Files External Drive to AgriSompo.

90.    Wells misappropriated ProAg's trade secrets under the Defend Trade Secrets Act.

91.    AgriSompo and Lindsey did not have ProAg's consent to receive the Customer List or Claims Files External Drive.

92.    AgriSompo received the Customer List on December 12, 2025, through its employee, Lindsey.

93.    AgriSompo also received the Claims Files External Drive.

94.    AgriSompo, Lindsey, and Wells knew or had reason to know that Wells acquired and disclosed the Customer List and Claims Files External Drive through improper means.

95.    AgriSompo, Lindsey, and Wells misappropriated ProAg's trade secrets.

96.    ProAg suffered, and continues to suffer, harm to its business because of Defendants' misappropriation of trade secrets.

## COUNT IV
### *Misappropriation of Trade Secrets in violation of the*
### *Kansas Uniform Trade Secrets Act, K.S.A. 60-3320* **et seq.**
### **(All Defendants)**

97.    ProAg incorporates by reference all allegations contained in the preceding Paragraphs, and in all other counts, as though set forth fully herein.

98.    ProAg undertakes extensive efforts to keep Protected Information and Personally Identifiable Information of their policyholders, as well as all other information about their policyholders and claims, confidential, including developing, implementing, and maintaining

information controls and systems as required by their Standard Reinsurance Agreement with the federal government.

99.     These efforts include, but are not limited to, requiring employees to sign non-disclosure statements and multiple confidentiality policies. ProAg also stores policyholder information in ProAgWorks™, a proprietary internal processing system that is limited to certain authorized ProAg employees and agents, access to which requires unique usernames, passwords, and multi-factor authentication.

100.    The information contained in the Customer List and Claims Files External Drive — as well as the compilation of that information in a single format — derives economic value from not being readily ascertainable by ProAg's competitors.

101.    AgriSompo admitted that the Customer List was economically valuable when Lindsey said it would "help tremendously" and "will help a lot." **Exh. A**.

102.    The Customer List and Claims Files External Drive are trade secrets under the Kansas Uniform Trade Secrets Act.

103.    Under her Non-Disclosure Statement, company policies, and Kansas law, Wells did not have authority or ProAg's consent to send the Customer List or Claims Files External Drive to AgriSompo.

104.    Wells misappropriated ProAg's trade secrets under Kansas Uniform Trade Secrets Act.

105.    AgriSompo and Lindsey did not have ProAg's consent to receive the Customer List or Claims Files External Drive.

106.    AgriSompo received the Customer List on December 12, 2025, through its employee, Lindsey.

107.    AgriSompo has received the Claims Files External Drive.

108.    AgriSompo, Lindsey, and Wells knew or had reason to know that Wells acquired and disclosed the Customer List and Claims Files External Drive through improper means.

109.    AgriSompo, Lindsey, and Wells misappropriated ProAg's trade secrets.

110.    ProAg suffered, and continues to suffer, harm to its business because of Defendants' misappropriation of trade secrets.

### COUNT V
#### *Breach of Contract*
**(Defendant Jami Wells)**

111.    ProAg incorporates by reference all allegations contained in the preceding Paragraphs, and in all other counts, as though set forth fully herein.

112.    As a condition of her employment at ProAg, Wells agreed to the terms of the Non-Disclosure Statement and multiple ProAg confidentiality policies and was allowed access to ProAg's trade secret and statutorily-protected information.

113.    The Non-Disclosure Statement and ProAg confidentiality policies required Wells to maintain the confidentiality of the policyholder information to which she had access.

114.    Wells breached her obligations under the Non-Disclosure Statement and ProAg confidentiality policies when she disclosed trade secrets to AgriSompo, including the Customer List and Claims Files External Drive.

115.    ProAg suffered damages as a result of Wells' breach because ProAg is unfairly losing business to AgriSompo due to its possession and use of ProAg's trade secrets.

## COUNT VI
### *Breach of Fiduciary Duty — Loyalty*
### (Defendant Jami Wells)

116.    ProAg incorporates by reference all allegations contained in the preceding Paragraphs, and in all other counts, as though set forth fully herein.

117.    Wells was an employee of ProAg for nineteen years, acted as ProAg's agent with respect to ProAg policyholders, and gained access to ProAg trade secrets.

118.    Wells owed ProAg the fiduciary duty of loyalty.

119.    Wells breached that fiduciary duty of loyalty when she stole ProAg's trade secrets, including the Customer List and Claims Files External Drive, and sent the trade secrets to AgriSompo without ProAg's consent while still employed at ProAg.

120.    As a result of Wells' breach of the fiduciary duty of loyalty, AgriSompo is in possession of ProAg's trade secrets and actively using them.

121.    AgriSompo's possession and use of ProAg's trade secrets has harmed ProAg because ProAg is unfairly losing business to AgriSompo.

## COUNT VII
### *Tortious Interference with Contract*
### (All Defendants)

122.    ProAg incorporates by reference all allegations contained in the preceding Paragraphs, and in all other counts, as though set forth fully herein.

123.    At all relevant times, ProAg had contracts with their policyholders for crop insurance.

124.    Crop insurance contracts are "continuous" policies, meaning they automatically renew annually.

125.    ProAg's policyholders typically renew their contracts with ProAg.

126.    Defendants were aware of ProAg's contracts with their policyholders through the Customer List and Claims Files External Drive.

127.    Defendants interfered with ProAg's contracts and their policyholders by misappropriating trade secrets that were compiled, conveyed, and received without ProAg's consent for the purposes of stealing ProAg's policyholders.

128.    Defendants' interference was not justified.

129.    ProAg has been harmed by Defendants' intentional and wrongful interference.

### COUNT VIII
### *Tortious Interference with Contract*
### (Defendants AgriSompo and Lindsey)

130.    ProAg incorporates by reference all allegations contained in the preceding Paragraphs, and in all other counts, as though set forth fully herein.

131.    AgriSompo and Lindsey interfered with ProAg's Non-Disclosure Statement and confidentiality policies by inducing Wells to steal and disclose ProAg's trade secrets.

132.    AgriSompo and Lindsey knew that Wells, as an employee of an AIP, had signed a Non-Disclosure Statement and, upon information and belief, AgriSompo and Lindsey also knew that Wells was bound by ProAg's confidentiality policies.

133.    AgriSompo and Lindsey intentionally induced Wells to breach her Non-Disclosure Statement and the ProAg confidentiality policies by prompting her to create and send ProAg's trade secrets, including the Customer List and Claims Files External Drive.

134.    AgriSompo and Lindsey's interference was not justified.

135.    ProAg has been harmed by AgriSompo and Lindsey's intentional and wrongful interference.

## COUNT IX
### *Tortious Interference with a Business Expectancy*
**(All Defendants)**

136.    ProAg incorporates by reference all allegations contained in the preceding Paragraphs, and in all other counts, as though set forth fully herein.

137.    At all relevant times, ProAg had contracts with their policyholders for crop insurance.

138.    Crop insurance contracts are "continuous" policies, meaning they automatically renew annually.

139.    ProAg's policyholders typically renew their contracts with ProAg.

140.    Defendants were aware of ProAg's contracts with their policyholders and other prospective policyholders through the Customer List and Claims Files External Drive.

141.    Defendants interfered with ProAg's business expectancies with their policyholders by misappropriating trade secrets that were compiled, conveyed, and received without ProAg's consent to steal ProAg's customers for AgriSompo.

142.    Defendants' interference was not justified.

143.    ProAg has been harmed by Defendants' intentional and wrongful interference.

## COUNT X
### *Unjust Enrichment*
**(All Defendants)**

144.    ProAg incorporates by reference all allegations contained in the preceding Paragraphs, and in all other counts, as though set forth fully herein.

145.    Defendants have used and benefited from, and continue to use and benefit from, ProAg's trade secrets contained in the Customer List and Claims Files External Drive.

146. As a result of Defendants' conduct, Defendants have gained an unfair economic advantage over ProAg and received other financial benefits including, but not limited to, profit, goodwill, and business development.

147. Defendants have unjustly gained and retained the benefits of their misconduct to the determent of ProAg.

148. The retention of these benefits is inequitable, and Defendants should be required to disgorge their wrongful gains.

### COUNT XI
### *Civil Conspiracy*
### (All Defendants)

149. ProAg incorporates by reference all allegations contained in the preceding Paragraphs, and in all other counts, as though set forth fully herein.

150. Defendants agreed and worked in concert to commit the tortious conduct alleged above, including but not limited to the compilation and disclosure of ProAg's trade secrets.

151. The aim of Defendants' conspiracy was the theft of ProAg's trade secrets.

152. Defendants' conduct is unlawful, or they achieved the aim of the conspiracy through unlawful means.

153. Defendants committed multiple overt acts in furtherance of their conspiracy, as alleged above.

154. Defendants have been successful in that they obtained ProAg's trade secrets and are currently using them to steal ProAg's policyholders.

155. As a result of Defendants' conspiracy, ProAg has been harmed.

## PRAYER FOR RELIEF

Wherefore, ProAg requests that the Court:

A.      Enter judgment in its favor and against Defendants on all counts;

B.      Enter a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction:

        (i)      enjoining Defendants from utilizing, in any manner, the Customer List, Claims Files External Drive, and any other non-public, confidential information obtained from ProAg;

        (ii)     requiring Defendants to return to ProAg, and purge from their possession, custody, and control, all documents, computer-based files or data, or information in any form, whether originals, copies, compilations, or derivations, including but not limited to the Customer List, Claims Files External Drive, and any other non-public, confidential information obtained from ProAg; and

        (iii)    requiring Defendants to identify in detail and under oath all disclosures and uses of the Customer List, Claims Files External Drive, and any other non-public, confidential information obtained from ProAg.

C.      Award compensatory damages to ProAg in an amount to be determined at a hearing and/or trial including, but not limited to, the attorneys' fees, computer forensic fees and costs that ProAg has incurred to investigate and address Defendants' unauthorized access and improper use of ProAg's computers and confidential information;

D.      Enter an order directing Defendants to disgorge all gross revenues and profits that they received as a result of their wrongful conduct, in an amount to be determined at trial;

E.      Award punitive damages in an amount to be determined at trial;

F.      Compensate ProAg for any unjust enrichment enjoyed by Defendants or anyone acting in concert with them;

G.      Enter an order directing Defendants to indemnify ProAg for any loss of reinsurance, administrative and operating expense, or penalties that the FCIC may impose on ProAg under the Standard Reinsurance Agreement and applicable federal law related to the unauthorized disclosure of policyholder data as well as all costs in responding to any investigation by the FCIC related thereto;

H.      Enter an order directing Defendants to indemnify ProAg for any actions brought by policyholders related to the unauthorized disclosure and removal of their policyholder files and information;

I.      Enter an order directing Defendants to indemnify ProAg for all expenses and penalties imposed by any state governmental authority related to any violation of state law that Wells' unauthorized disclosure of policyholder information may have caused; and

J.      Any such other legal and equitable relief as the Court deems appropriate under federal and/or Kanas law.

## **DEMAND FOR JURY TRIAL**

ProAg demands trial by jury to the fullest extent as allowed by law.

Dated: February 2, 2026

Respectfully submitted,

BOULWARE LAW LLC

By: /s/ Brandon J.B. Boulware

Brandon J.B. Boulware          KS # 25840
Jeremy M. Suhr                KS # 24025
1600 Genessee Street, Suite 760
Kansas City, MO 64102
Tele/Fax:        (816) 492-2826
brandon@boulware-law.com
jeremy@boulware-law.com

***Attorneys for Plaintiff***

# **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I, Travis Greene, as Interim Regional Vice President of Sales for the Southern Region at ProAg Management, Inc., state and affirm that I have read the foregoing Verified Complaint and the facts and matters stated therein are true and correct based on my knowledge, information, and belief, and upon the investigation of ProAg Management, Inc., with which I am familiar.

I, Travis Greene, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 2nd day of February 2026, at _Havensville_____, Kansas.


Signature: _Travis Greene_____
DocuSigned by:
A4FF35A6F8B4487...
Travis Greene

28