**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| Pro Ag Management, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 26-2066-JWB-BGS |
| v. | ) | |
| | ) | |
| AgriSompo North America, Inc., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER GRANTING MOTION TO ENFORCE FORENSIC EXAMINATION ORDER</u>

Before the Court is Plaintiff Pro Ag Management's (hereinafter Plaintiff) Motion to Enforce the Stipulated Forensic Examination Order. (Doc. 75.) A response has been filed on behalf of the Defendants AgriSompo North America, Inc., Sompo International Holdings, and Endurance Services Limited (hereinafter "AgriSompo Defendants"[1]) (Doc. 85) and Plaintiff has filed its reply (Doc. 88).[2] Having reviewed the briefing of the parties, the Court **GRANTS** Plaintiff's motion.

## FACTUAL BACKGROUND

This case involves Plaintiff's federal and state law claims for violations of trade secrets, breach of contract, and tortious interference. Plaintiff filed its federal court Complaint on February 2, 2026 (Doc. 1) wherein it contends Defendants misappropriated Plaintiff's trade secrets, including a customer list, claims files, and other non-public confidential information. (*See generally id.*)

Plaintiff continues that Defendant Jami Wells, who was employed as an adjuster by Plaintiff, breached her contract with Plaintiff upon taking a job with AgriSompo. (*See id.*, at 11.) More specifically, Plaintiff alleges that Wells, while still employed by Plaintiff, "sent a customer list to her

---

[1] When referring to AgriSompo only, rather than the corporate Defendants collectively, the Court will indicate "Defendant AgriSompo."

[2] The Court notes that Plaintiff's reply brief exceeds the page limitations provided by D. Kan. Rule 7.1(d). While the Court could strike it on that basis, it will not do so here. Going forward, the parties are instructed to comply with D. Kan. Rule 7.1 and all other local and federal rules.

future employer, Defendant AgriSompo, through an employee of Defendant AgriSompo, Defendant Kayla Lindsey, and [Wells] also transferred hundreds of claims files to at least three different external drives, whose destination was to be determined through the forensic protocol." (Doc. 75, at 2 (citing Doc. 1, ¶¶ 1-12).)  Defendant Lindsey responded to Defendant Wells by email that the Customer List will "help tremendously next year."  (Doc. 1, at ¶ 7.)

 In its Complaint, Plaintiff brings claims for misappropriation of trade secrets pursuant to 18 U.S.C. § 1836, *et seq.* and K.S.A. 60-3320, *et seq.* against all Defendants (Counts I and II), breach of contract and breach of fiduciary duty against Defendant Wells (Counts III and IV), tortious interference with contract against all Defendants (Counts VII and VIII (against AgriSompo and Lindsey only)), tortious interference with business expectancy against all Defendants (Count IX), unjust enrichment against all Defendants (Count X), and civil conspiracy against all Defendants (Count XI).  (*Id.*, at 15-24.) Plaintiff also sought a temporary restraining order as well as preliminary and permanent injunctions against all Defendants.[3] (*Id.*, at 15-17.)

Defendants generally deny Plaintiff's claims.  They specifically deny any trade secrets were misappropriated or that any information claimed to be a trade secret was used by Defendants in any way, including to divert business from Plaintiff.  Further, Defendant Wells denies personal jurisdiction.  (*See generally* Docs. 62, 72, 77.)

On February 6, 2026, following a hearing before Chief Judge Broomes, the Stipulated Order of Injunction (Doc. 25) was entered as a result of the parties' resolution of  Plaintiff's Motion for a Temporary Restraining Order (Doc. 4).  That Order memorialized Defendants' agreement relating to Plaintiff's non-public confidential information.  (*Id.*)  It further indicated the parties would be allowed to engage in expedited discovery related to this information.  (*Id.*)  The parties were instructed to negotiate a forensic protocol to cover the search for such information in Defendants'

---

[3] The requests for the restraining order and injunction(s) were memorialized in Plaintiff's motions at Doc. 4 and Doc. 7.

possession. (*Id.*) Defendant Wells also made certain agreements regarding her personal electronic devices. (*Id.*)

Following extensive negotiations by the parties, on February 26, 2026, they filed their joint motion (Doc. 43) requesting the entry of the resulting Stipulated Forensic Examination Order (hereinafter "Forensic Order") pursuant to the Stipulated Order on Injunction. After some requested revisions were made, the revised finalized Forensic Order was entered by the undersigned Magistrate Judge on March 9, 2026. (Docs. 47 and 55.)

The Forensic Order enumerated stipulations reached by the parties as to the expedited independent forensic examination of electronically stored information ("ESI") in the possession, custody, or control of the AgriSompo Defendants. (*Id.*) It called for the appointment of a "neutral expert … qualified in digital forensics and electronic discovery … ." (*Id.*, at 2.) It memorialized the parties agreement to the appointment of AlixPartners (the "Expert") as the neutral expert. (*Id.*, at 2-3.) The agreement further requires the Expert to "**remain neutral and independent of the parties** and [to] avoid conflicts of interest. … Furthermore, **the Expert shall be prohibited from engaging in *ex parte* communications**, except with the written approval of any party not present or party to such communication." (Doc. 55, at 3 (emphasis added).)

In the present motion, Plaintiff contends that Defendant AgriSompo suggested AlixPartners to serve as the Expert, "without disclosing the nature of the prior or current relationship between AgriSompo and AlixPartners." (Doc. 75, at 2.) Plaintiff also argues that the AgriSompo Defendants and their general counsel engaged in "clear violations" of the stipulated forensic order by engaging "in *ex parte* communications" with the Expert and "signed an engagement letter solely on behalf of AgriSompo that creates an incurable conflict of interest" for the allegedly neutral Expert. (Doc. 75, at 1; *see also* Doc. 75-6.)

After the Plaintiff raised concerns about ex parte communications, the AgriSompo Defendants admitted that their client had engaged in prior communications with the Expert without Plaintiff's involvement, and subsequently produced those communications.  Defense counsel stated that this portion of the agreement "[s]omehow … slipped between the cracks," (Doc. 75-8, at 1), inferring that Defendants never intended the prohibition on *ex parte* communications to be included in the Forensic Order.

Plaintiff argues that these communications reveal that the AgriSompo Defendants general counsel had been in contact with the Expert since February 12, before the Forensic Order was signed, including sharing a draft of that Order for the Expert's input, that the Expert had agreed to act under AgriSompo Defendants' direction, and that the Expert maintained an ongoing business relationship with the AgriSompo Defendants on other matters.  (Doc. 75, at 3-4.)

Plaintiff also subsequently learned of at least one Microsoft Teams conference call between Defendants and employees of the Expert (held on March 4, 2026), for which Plaintiff has been provided no notes from either the Expert or Defendants.  (*See id.*, at 5 (citing Doc. 75-4, at 9-10).[4]) Further, Expert's employees flew to meet the AgriSompo Defendants at their offices on March 11, 2026; Plaintiff contends it still has not been informed of the substance of that meeting.  (*Id.*, at 5.) Plaintiff argues these events took place while Defendants and the Expert had copies of the Forensic Order and were aware of its terms.[5]  (*Id.*, at 6.)  Plaintiff argues that any one of these events is a "disqualifying issue on its own."  (*Id.*, at 4.)

The AgriSompo Defendants reply that they committed no "substantive misconduct," but merely engaged in "routine, disclosed, and largely logistical communications that do not constitute

---

[4] Defendants' briefing does not address this issue, thus the Court will consider it undisputed.

[5] When confronted with this, defense counsel ignored the fact that Defendants would have been aware that the parties were negotiating that *ex parte* communications would not be allowed and simply retorted that "there was no even arguable prohibition [against *ex parte* communications] in place" before the final Forensic Order was entered.  (Doc. 75-8, at 1.)

improper *ex parte* contact[.]"  (Doc. 85, at 1.)  They argue that any alleged conflict of interest "falls

well short of the legal standard for disqualification."  (*Id.*)

## LEGAL ANALYSIS

The "inherent authority" of the District Court regarding neutral expert witnesses is governed

by Fed. R. Evid. 706.  *Jama Invests., LLC v. Incorporated Co. of Los Alamos*, No. 04-1173-JB/ACT, 2006

WL 1228800, at *1 (D. N.M. Feb. 17, 2006).  That Rule states in part that:

> [t]he court may on its own motion or on the motion of any party enter
> an order to show cause why expert witnesses should not be appointed,
> and may request the parties to submit nominations. The court may
> appoint any expert witnesses agreed upon by the parties, and may
> appoint expert witnesses of its own selection. An expert witness shall
> not be appointed by the court unless the witness consents to act. A
> witness so appointed shall be informed of the witness' duties by the
> court in writing, a copy of which shall be filed with the clerk, or at a
> conference in which the parties shall have opportunity to participate.
> A witness so appointed shall advise the parties of the witness' findings,
> if any[.]

Fed. R. Evid. 706.

Pursuant to that Rule, "*ex parte* communications between one party and the expert may

justify rejecting the expert's analysis as unreliable."  29 Charles Alan Wright & Victor James Gold,

Fed. Prac. & Proc. Evid. § 6305 (2d ed. Sept. 2025 Update) (citing *G.K. Las Vegas Ltd. Partnership v.*

*Simon Property Group, Inc.*, 671 F. Supp. 2d 1203, 1215 (D. Nev. 2009) (emphasis added).

Additionally,

> such communications may compromise the impartiality of the witness
> or at least call that impartiality into question.  On the other hand, there
> may be situations where ex parte communications with appointed
> experts are both unavoidable and harmless.

*Id.* (citation omitted) (emphasis added).  As the party seeking to disqualify the Expert, Plaintiff bears

the burden of justifying the relief requested herein.  *Koch Refining Co. v. Jennier L. Boudreau M/V*, 85

F.3d 1178, 1181 (5th Cir. 1996).

In the matter before the Court, Plaintiff argues that the communications between the Expert and the AgriSompo Defendants "violate both the letter and the spirit of the Forensic Order" and are "clearly prohibited" per ¶ 2.2 of the Forensic Order, which states that the Expert and the parties "shall be prohibited from engaging in ex parte communications." (Doc. 75, at 6 (citing Doc. 55, ¶ 2.2).) According to Plaintiff, these communications "destroy any purported neutrality" of the Expert. (*Id.*) Plaintiff continues that the purpose of negotiating the Forensic Order was to "create a neutral process where both parties had an opportunity to provide input on the parameters of the forensic examination," but that illusion of neutrality has been destroyed. (*Id.*)

The AgriSompo Defendants argue that Plaintiff cannot meet its burden to disqualify the Expert because the communications at issue were "administrative or logistical communications necessary to carry out court-ordered work" as opposed to "substantive communications that bear on an expert's opinions, conclusions, or disputed issues[.]" (Doc. 85, at 4.) Defendants argue that Plaintiff has failed to show any instruction to [the Expert] to reach a particular conclusion, any alteration or manipulation of forensic methodology, any suppression, modification, or destruction of evidence, or any opinion formed, influenced, or reported outside the agreed protocol. (*Id.*, at 5.) The Court notes, however, that following a review of the parties' briefing and exhibits thereto, Defendant does not contend that Plaintiff knows the entirety of every *ex parte* telephone conference, Microsoft Teams meeting, or in-person meeting Defendants have had with the Expert.

In *G.K. Las Vegas Ltd. Partnership*, the District of Nevada was faced with a situation wherein defendants' counsel engaged in *ex parte* meetings, delivered legal documents, and answered questions of the neutral forensic examiners without the involvement of plaintiff's counsel. 671 F. Supp. 2d at 1215. The court held that these actions so compromised the examiners' independent role that the examiners' analysis was found to be unreliable. *Id.* The court continued that the defendants treated the examiners "as their own personal expert, without giving due respect to this Court's direction in

6

… the Forensic Examinations Order." *Id.* The *G.K. Las Vegas* court disqualified the expert examiners after finding that the defendants violated the court's order to work cooperatively with plaintiffs in good faith.

Defendants argue that any reliance on the *G.K. Las Vegas* decision is "misplaced" because the facts therein "involved undisclosed, substantive strategy meetings, and opinion-shaping interactions between one party and a purportedly neutral forensic examiner," which, according to Defendants, "directly compromised the examiner's independence and undermined the integrity of the court-ordered process."[6] (Doc. 85, at 5.) Defendants argue that the present situation "bears no resemblance to *G.K. Las Vegas*" because "there is no evidence of any hidden or unilateral forensic methodology, no undisclosed reporting, no private opinions communicated outside the protocol, and no prejudice to Plaintiff." (*Id.*)

The Court finds Defendants' attempt to distinguish the *G.K. Las Vegas* decision to be unpersuasive. Defendants do not dispute that they had various undisclosed communications (by email, telephone, Teams meeting, and at least one in-person meeting, with the Expert before, and during the process of, negotiating the Forensic Order with Plaintiff's counsel. The Court is not entirely convinced that Defendants' communications were merely administrative or logistical communications as opposed to more substantive in nature. For instance, Defendants' *ex parte* communications with the Expert set parameters as to the electronic media that should be review and which custodians would have their electronic devices collected. (*See e.g.,* Doc. 75-3, at 8; *see also* Doc. 75-1, at 4; .) These topics arguably implicate substantive issues that are specifically addressed in the Forensic Order. (*See* Doc. 55, at ¶¶ 3 and 5.)

---

[6] As an initial aside, the Court is not particularly persuaded by Defendants' reliance on a North Carolina state Court of Appeals case to discredit or distinguish the *G.K. Las Vegas* holding. (Doc. 85, at 5 (citing *Point Intrepid, LLC, v. Farley*, 714 S.E.2d 797, 802 (N.C. App. 2011).)

Further, Defendants gloss over their undisclosed preexisting business relationship with the Expert. They also seemingly sweep under the rug – yet do not deny – that at least one Microsoft Teams conference call occurred between Defendants and employees of the Expert and that two of the Expert's employees flew to meet the AgriSompo Defendants at their offices on March 11, 2026, the substance of which remains undisclosed to Plaintiff or the Court.

There is no way for the Court to determine in retrospect whether Plaintiff would have agreed to AlixPartners as the neutral Expert in this case had they been aware of these communications and the AgriSompo Defendants' prior relationship with the Expert during the parties' negotiations of the Forensic Order. That stated, the Court sympathizes with Plaintiff's concerns regarding the agreement given the ultimate disclosure of this information after the fact.

The AgriSompo Defendants argue that "to order the drastic relief sought by Plaintiff, the Court should require a case-specific showing of actual risk of bias, not conjecture." (Doc. 85, at 6.) Defendants do not, however, provide any guidance as to how Plaintiffs would be able to prove "actual risk of bias" beyond what they have already alleged as to *ex parte* communications, in person meetings, and the prior relationship – particularly given that Defendants alone know all of the relevant facts.

Defendants also argue that "Plaintiff cites no authority holding that an expert's unrelated work for a party – absent adversity, subject-matter overlap, or exposure to the opposing party's confidential information – constitutes a disqualifying conflict." (Doc. 85, at 6.) Conversely, Defendants have offered little explanation as to their prior work with the Expert and have offered no authority holding that the Court and an opposing party should be unconcerned that such allegedly "unrelated work" was not disclosed during the negotiation process.

Defendants continue that "if the Court finds that AlixPartners should no longer serve in this capacity, AgriSompo respectfully requests that the Court merely delete any language in the Order

8

contemplating an agreed upon neutral forensic examiner and simply allow each party to retain its own examiner at its own costs." (*Id.*, at 6-7.) The Court is intrigued by Defendants' position because it undermines their own argument that AlixPartners was genuinely neutral.

Defendants' final argument is that the wording of its engagement letter "does not destroy neutrality" of the Expert – particularly the language that the Expert would act "under the Firm's direction as to scope." (Doc. 85, at 7.) Defendants assert that this "phrase is commonplace in expert retainer agreements and refers to task authorization and project definition, not control over analysis, methodology, or conclusions." (*Id.*) While the Court is cognizant of this being "commonplace" language in expert retainer agreements, the fact remains that this is not a typical or "commonplace" situation in which an expert has been engaged by one party in a lawsuit. Rather, the parties negotiated the choice of this expert to act in a neutral capacity – negotiations which Plaintiff is justified in feeling may have been tainted. This language could be seen as evidence that the AgriSompo Defendants intended to treat the examiners "as their own personal expert." *G.K. Las Vegas*, 671 F. Supp. 2d at 1215. The court held that these actions so compromised the examiners' independent role that the examiners' analysis was found to be unreliable. *Id.* Plaintiff would be remiss to not question why the Expert had its own retainer agreement with Defendant to which Plaintiff was not a party.

Regardless, the retainer agreement itself is not determinative of the Court's analysis. Rather, the Court is persuaded by the cumulative circumstances surrounding the parties' negotiations to engage Alix Partners as the agreed neutral expert in this case – Defendants' *ex parte* communications with the Expert, closed-door meetings between Defendant AgriSompo and employees of the Expert, the existing business relationship between Defendant AgriSompo and the Expert, and the fact that defense counsel was apparently unaware that that the prohibition on *ex parte* communications had "slipped through the cracks." It is undisputed that these circumstances were

not disclosed to Plaintiff before the Forensic Order was finalized.  All of these circumstances call into question the reliability of the Expert's work in this case.  Simply stated, Plaintiff's concerns are justified.

The Court thus finds that Plaintiff has met its burden to establish that the *ex parte* communications – particularly when considered in conjunction with Defendants' nondisclosed, preexisting relationship with the Expert – have sufficiently called into question the impartiality of the Expert.  *See* Wright & Gold, 29 Fed. Prac. & Proc. Evid. § 6305 (discussing Fed. R. Evid. 706).  The Court will not force Plaintiff to remain a party to a stipulated agreement about which it has significant and justified misgivings.

As indicated above, Defendants have requested that if the Court finds AlixPartners should no longer serve as the neutral Expert, the Court should dispense a neutral expert altogether and permit each side to retain an expert at their own cost.  The Court refrains from doing so as it sees the benefit of an independent Expert in this instance.  The ESI issues in this case present "complex, or technical issues[.]"  *McClendon v. City of Albuquerque*, No. 95-024-JAP/ACT, 2015 WL 13667177 at *4 (D.N.M. Oct. 13, 2015) (citation and internal quotation marks omitted).  The use of a Rule 706 neutral expert would "aid the Court … in its assessment of [these] technical issues."  *Duran v. Curry County Adult Detention Center*, No. 09-0758-MCA/SMV, 2013 WL 12172042 at *11 (D. N.M. Aug. 30, 2013), *aff'd*, 663 Fed. Appx. 684 (10thCir. Oct. 18, 2016) (citation and internal quotation marks omitted); *see also Brooks v. Colorado Dept. of Corrections*, No. 22-1359, 2024 WL 4564162, at *3-4 (10th Cir. Oct. 24, 2024) (discussing the District Court's determination that the purpose of appointing a Rule 706 expert is to assist the court).  The Court also finds that the use of a neutral expert would effectuate the stated policy goal of Rule 706, which "is to promote accurate fact-finding."  Wright & Gold, 29 Fed. Prac. & Proc. Evid. § 6304 (April 2026 update).  Further, even though a Rule 706

neutral expert will be used herein, the parties are not precluded from calling their own experts.  Fed. R. Evid. 706(e).

The Court thus ORDERS the parties to confer regarding a new neutral expert to serve in this case.  Counsel for Plaintiff and the AgriSompo Defendants are Ordered to meet and confer on the selection of such an expert who is qualified in digital forensics and electronic discovery. Thereafter, on or before **May 5, 2026**, the parties are instructed to provide the Court with a joint email status report identifying their newly agreed upon neutral expert.  The parties shall also submit to the Court a revised Stipulated Forensic Examination Order, consistent with Doc. 55, reflecting the choice of the newly chosen expert.  While the AgriSompo Defendants were previously allocated the fees and costs for AlixPartners (subject to later potential reallocation by the Court upon motion by the AgriSompo Defendants (*see* Doc. 55, at 12)), any and all of fees and costs of the new Expert will be split evenly between Plaintiff and the AgriSompo Defendants going forward.  The AgriSompo Defendants will bear any costs incurred thus far by Alix Partners in this case.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Enforce the Stipulated Forensic Examination Order (Doc. 75) is **GRANTED** as set forth herein.

Dated this 21ˢᵗ day of April, 2026, at Wichita, Kansas.

/S/ BROOKS G. SEVERSON
Brooks G. Severson
U.S. Magistrate Judge

11