**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| Pro Ag Management, Inc.,<br><br>Plaintiff,<br><br>v.<br><br>AgriSompo North America, Inc., et al.,<br><br>Defendants. | ) | Case No. 26-2066-JWB-BGS |

**MEMORANDUM & ORDER GRANTING MOTION TO AMEND**

Before the Court is Plaintiff Pro Ag Management's (hereinafter "Plaintiff") motion for leave to amend the Complaint. (Doc. 154.) The motion indicates it is "partially unopposed."[1] (*Id.*) Having reviewed the briefing of the parties, the Court **GRANTS** Plaintiff's motion.

**FACTUAL BACKGROUND**

**I. The Operative Complaint and Proposed Amendments (Docs. 1, 154-1).**

Plaintiff filed its Complaint on February 2, 2026 (hereinafter the "operative Complaint," Doc. 1) against Defendants AgriSompo North America, Inc., Sompo International Holdings, Endurance Services Limited (collectively the "AgriSompo Defendants"), Jami Wells, and Kayla Lindsey. Plaintiff contends that Defendant Jami Wells, who was employed as an adjuster by Plaintiff, breached her contract with Plaintiff upon taking a job with AgriSompo, and sent confidential and proprietary information belonging to Plaintiff to Defendant Lindsay, an employee with Defendant AgriSompo. (*See id.*, at 1-4.)

Plaintiff asserts claims for misappropriation of trade secrets pursuant to 18 U.S.C. § 1836, *et seq*. and K.S.A. 60-3320, *et seq*. against all Defendants (Counts I and II), breach of contract and

[1] Defendants Jami Wells and Kayla Lindsey do not oppose Plaintiff's motion, while the AgriSompo Defendants do. The Court notes that the proposed amended pleading removes Ms. Lindsey as a named Defendant. (*See* Doc. 154-1.) The AgriSompo Defendants have not indicated opposition to her dismissal from the case. (*See generally* Doc. 162.)

breach of fiduciary duty against Defendant Wells (Counts III and IV), tortious interference with contract against all Defendants (Counts VII and VIII (against AgriSompo and Lindsey only)), tortious interference with business expectancy against all Defendants (Count IX), unjust enrichment against all Defendants (Count X), and civil conspiracy against all Defendants (Count XI). (*Id.*, at 15-24.) Plaintiff also sought a temporary restraining order as well as preliminary and permanent injunctions against all Defendants.[2] (*Id.*, at 15-17.)

Defendants generally deny Plaintiff's claims. They specifically deny any trade secrets were misappropriated or that any information claimed to be a trade secret was used by Defendants in any way, including to divert business from Plaintiff. Further, Defendant Wells denies personal jurisdiction. (*See generally* Docs. 62, 72, 77.)

Plaintiff's proposed amended pleading broadens and refines Plaintiff's claims by adding a detailed expansion of third party AgRisk Solutions, Inc. ("AgRisk")[3] role as Plaintiff's agent and an alleged direct participant in the transfer of confidential information.[4] (*See generally* Doc. 154-1.) It also asserts new legal theories –including aiding and abetting breach of fiduciary duty – and expands Plaintiff's allegations of tortious interference and conspiracy. It pleads new and more detailed facts describing how Plaintiff's confidential policyholder and financial information allegedly reached

---

[2] The requests for the restraining order and injunction(s) were memorialized in Plaintiff's motions at Doc. 4 and Doc. 7. The parties reached a stipulation to resolve the motion for temporary restraining order. For good cause shown, the District Judge granted the motion and entered the stipulation. (Doc. 25.) Count I of the proposed amended pleading continues to seek a permanent injunction to the extent that any Defendant posits that the Stipulated Order of Injunction does not grant permanent injunctive relief. (Doc. 154-2, at 24.)

[3] AgRisk is Plaintiff's agent that sells and services various insurance policies. (*See* Doc. 154-1, at ¶ 58.) According to Plaintiff, by contract and under Kansas law, AgRisk owed a fiduciary duty to act in Plaintiff's best interest. (*Id.*, at ¶ 2.)

[4] As discussed below, many of the proposed changes consist of new or revised factual allegations. The causes of action in the proposed amended pleading are as follows: a) Permanent Injunction against all Defendants (Count I, revised from original Count II); b) Misappropriation of Trade Secrets in Violation of Defend Trade Secrets Act against all Defendants (Count II, revised from original Count III); c) Misappropriation of Trade Secrets in Violation of Kansas Uniform Trade Secrets Act against all Defendants (Count III, revised from original Count IV); d) Breach of Contract against Jami Wells (Count IV, Count V of original Complaint); e) Breach of Fiduciary Duty against Jami Wells (Count V, original Count VI); Tortious Interference with Contract against AgriSompo Defendants (Counts VI and VII, revised from original Counts VII and VIII); Tortious Interference with Business Expectancy against all Defendants (Count VIII, Count IX of original Complaint); Unjust Enrichment against AgriSompo Defendants (Count IX, revised from original Count X); Aiding & Abetting Breach of Fiduciary Duty against AgriSompo Defendants (Count X, new claim); and Civil Conspiracy against all Defendants (Count XI, revised from original Count XI). (Doc. 154-2, at 24-36.)

Defendant AgriSompo through Defendant Wells and AgRisk. The proposed amendments also include new categories of alleged trade secrets – such as "Keyed Customer Information" – along with clarifications regarding the scale of the alleged misconduct and the mechanisms by which Plaintiff was harmed. It includes updated litigation developments that have occurred since the case was filed, while providing clarification regarding party relationships as well as the roles and conduct attributed to the key actors. (*See generally* Doc. 154-1.)

**II. Progression of the Case.**

At the outset of this litigation, the parties subsequently negotiated a stipulated forensic examination Order regarding the inspection of certain claims files external drives. (Docs. 25, 35, 43.) The parties filed their joint motion for entry of that stipulated Order on February 26, 2026. (Doc. 43.) After review of the parties joint motion, the undersigned determined that the proposed order required revisions. The revised stipulated forensic examination Order was entered on March 9, 2026. (Doc. 54, text Order; Doc. 55.) Plaintiff moved to enforce that order on March 18, 2026. (Doc. 75.) The undersigned granted the motion and disqualified the initial forensic expert by Order dated April 21, 2026. (Doc. 92.) The amended stipulated forensic examination Order was entered on May 15, 2026. (Doc. 106.)

While the above was occurring, the Court entered its initial Scheduling Order on April 15, 2026, establishing May 26, 2026, as the deadline for motions to amend. (Doc. 91.) While Plaintiff acknowledges this deadline (Doc. 154, at 3), it continues by summarizing the delays in the case resulting from the parties' disagreements regarding the forensic examination issue as well as various discovery disputes. For instance, Plaintiff served discovery requests in February of this year, but, according to Plaintiff, AgriSompo obtained extensions, asserted "voluminous" objections, and produced only 34 pages of documents before the amendment deadline. (Doc. 154, at 2.) The parties' discovery disputes culminated in a May 28, 2026, pre-motion discovery conference with the

undersigned, after which the Court directed AgriSompo to supplement its responses and produce responsive documents by June 29, 2026. (*See* Docs. 104, 107, 109, 110, 113.) Plaintiff asserts that by the time the motion to amend deadline had expired, Defendant AgriSompo had produced virtually no discovery documents and did not do so "for over another month." (Doc. 154., at 3.) That said, at no time did Plaintiff seek an extension of the motion to amend deadline.

These various delays resulted in the parties' joint motion to amend the Scheduling Order, which was granted in part on September 29, 2026. (*See* Docs. 144, 149.) That Order extended various deadlines in this case, including the deadline to serve written discovery until October 14, 2026, and the deadline to complete depositions to January 12, 2027. (Doc. 149.) The Pretrial Conference was re-set from September 22, 2026, to February 24, 2027, and the dispositive-motion deadline from October 20, 2026, to March 24, 2027. (*Id.*) The deadline to file motions to amend had already passed and was not reset.

Plaintiff did, however, raise the proposed amendment in the parties' September 25, 2026, Joint Status Report to the Court (Doc. 147) and again during the September 28, 2026, pre-discovery motion telephone conference. The Court ordered Plaintiff to provide Defendants with the proposed amended pleading by September 28, 2026, and ordered Defendants to advise Plaintiff by October 5, 2026, whether they opposed the motion. (Doc. 149.) After Plaintiff timely provided Defendants with a draft of the proposed pleading and several of the Defendants indicated they opposed it, Plaintiff filed its motion on October 6, 2026. (Doc. 154.)

## III. The Present Motion.

Plaintiff brings the present motion seeking to amend based on recent discovery, discussed below, including a "key deposition" that occurred in September 2026. (*Id.*, at 1.) According to Plaintiff, the evidence indicates that Defendant AgriSompo enacted in an allegedly "broader scheme" to harm Plaintiff than Plaintiff initially realized. Plaintiff contends that the proposed

amendment "streamlines" the case by removing Defendant Kayla Lindsey while refocusing the existing tortious interference with contract claim on the alleged new evidence of AgriSompo's efforts to cause AgRisk to breach its agency agreement with Plaintiff. (*Id.*)

Plaintiff contends that its proposed amendments arise from the August 3, 2026 deposition of Michael Scherer, in his individual capacity and as a corporative representative of Ag Risk, , the August 28, 2026 deposition of AgriSompo's corporate representative Jerod Dowell, and the September 18, 2026 deposition of Quinn Huhmann, AgriSompo's Business Development Representative. (Docs. 133, 137, and 140.) Plaintiff notes that transcripts of these depositions became available on August 12, September 9, and September 22, 2026. (Doc. 147, at 2.)

The AgriSompo Defendants oppose Plaintiff's motion, arguing that Plaintiff possessed information regarding policyholder transfers before the amendment deadline and, in some instances, even before filing this action. These Defendants assert that Plaintiff had processed at least seventeen AgRisk transfer forms before filing suit, had prepared more than 80 production reports by the end of February 2026 and more than 150 by the end of March 2026, and had processed approximately 200 records involving 170 unique insureds by April 29, 2026. (Doc. 162, at n.2.) The AgriSompo Defendants further contend that Plaintiff received Michael Scherer's affidavit on April 15, 2026, and therefore knew before the amendment deadline that AgRisk was involved in transferring policyholders to AgriSompo. (*Id.*, at 9.)

The AgriSompo Defendants also challenge the delay between Plaintiff's alleged discovery of evidence and the filing of the present motion. According to these Defendants, AgRisk produced an email concerning the alleged "keying in" process on June 18, 2026. Further, they contend that as of the Scherer deposition on August 3, 2026, Plaintiff indicated that it possessed enough evidence to amend. (*Id.*, at 14-15.) Plaintiff's August 10, 2026, interrogatory responses state that discovery "very recently obtained [by Plaintiff] shows that AgriSompo wrongfully interfered with … [Plaintiff's]

contract with AgRisk by working with AgRisk over a multi-month period to recruit both Wells and [Plaintiff's] policyholders to move and transfer to AgriSompo." (*Id.* (citing Doc. 162-13, at 13).) The AgriSompo Defendants argue that the resulting delay demonstrates a lack of diligence and would cause prejudice because written discovery and depositions that have occurred may need to be revisited. (*Id.*) Plaintiff, however, contends that as of this time, it was already in the process of "diligently pursuing" other, related depositions. (Doc. 171, at 5.) The AgriSompo Defendants also argue that the amendment would be futile, contending that Plaintiff has failed to allege why the keyed-in information constitutes a trade secret. (Doc. 162, at 7.)

Plaintiff replies, however, that its general awareness of policyholder transfers did not encompass the alleged coordination between AgriSompo and AgRisk that forms the basis of the proposed amendments. Plaintiff relies particularly on an email produced by AgRisk on July 30, 2026, "just before" the August 3, 2026, deposition and testimony subsequently obtained from Scherer, Dowell, and Huhmann. (*see* Doc. 171, at 3-4 (citing Doc. 154-6, "Exhibit 56," discussed more thoroughly, *infra*.) Plaintiff maintains that it reasonably awaited the pertinent depositions and transcripts before deciding whether it had a sufficient factual basis to amend. (*Id.*, a 5.)

As to the issue of futility, Plaintiff contends that these arguments by the AgriSompo Defendants are largely based on contested factual contentions that "go well beyond the proposed pleadings." (*Id.*, at 6.) As such, Plaintiff contends these arguments are better suited to be addressed at the summary judgment stage, rather than on a motion to dismiss. (*Id.*)

## LEGAL ANALYSIS

### I. Legal Standards for Motions to Amend.

When moving to amend after the expiration of the scheduling order deadline, the movant "must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Gale v. City & Cnty. of Denver*, 962 F.3d 1189, 1195 (10th Cir.

2020) (quotation omitted) (affirming order finding good cause and granting leave to amend); *see also Horocofsky v. City of Lawrence, Kansas*, No. 25-3024, 2026 WL 2673123, at *11 (10th Cir. Sept. 10, 2026) (affirming this Court's decision denying leave to amend where motion was filed five months after deposition giving rise to amended pleading).

Under Rule 16(b)(4), courts consider whether a moving party has shown that "the scheduling deadlines cannot be met despite the movant's diligent efforts." *Husky Ventures, Inc. v. B55 Investments, Ltd.*, 911 F.3d 1000, 1019-20 (10th Cir. 1018). Further, a movant can meet the required good cause basis for modifying a scheduling order deadline by identifying "newly-obtained information" or providing "an adequate explanation for any delay." *Id.*, at 1020*; see also Gale*, 962 F.3d at 1195.

The issue of diligence is a practical one that is dependent on context. In *Horocofsky*, 2026 WL 2673123, at *11, the Tenth Circuit affirmed the denial of leave to amend when the motion had been filed five months after the deposition giving rise to the proposed amendment. Similarly, in *Wilson v. Wal-Mart Stores, Inc.*, this District denied a request to amend when the plaintiff failed to explain a 44-day delay following the relevant depositions. No. 07-2263-JWL, 2008 WL 2622895, at *3 (D. Kan. June 30, 2008). Decisions such as these confirm that the Court must examine when Plaintiff is alleged to have acquired the material information, what additional investigation was reasonably necessary as a result, and how promptly Plaintiff acted after determining there was a sufficient basis to move to amend.

Once Rule 16 has been satisfied, the motion is analyzed under the standard for Fed. R. Civ. P. 15. Under Fed. R. Civ. 15(a)(2), leave to amend should be freely given when justice requires. It may be denied upon a showing of undue delay, prejudice to the opposing party, bad faith, or futility. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006).

**II. Rule 16(b)(4) Good Cause and Diligence.**

In analyzing Plaintiff's request to amend under the Rule 16 standard, the Court finds that Plaintiff has demonstrated good cause. The relevant inquiry is not merely whether Plaintiff knew before the May 26, 2026, motion to amend deadline that policyholders were moving from Plaintiff to AgriSompo or that AgRisk participated in processing the transfers. Rather, the relevant inquiry is whether Plaintiff had established a belief that AgriSompo actively encouraged or induced AgRisk to breach contractual obligations. The proposed amendments concern the nature, scope, and purpose of communications and coordination between AgriSompo, AgRisk, and relevant witnesses. Plaintiff's general awareness of customer movement alone would not necessarily have equated to a sufficient awareness of facts for Plaintiff to allege that AgriSompo induced AgRisk to breach its contractual obligations.

As Plaintiff alleges, prior to the expiration of the motion to amend deadline, the AgriSompo Defendants had produced only 34 pages of documents in response to Plaintiff's discovery requests. Further, the parties were still litigating basic discovery issues that required a pre-discovery motion telephone conference with the Court on May 28, 2026, two days after the amendment deadline. (Docs. 109, 115.)

More specifically, Plaintiff asserts that AgriSompo's April 15, 2026, response to Request No. 7 was problematic. (Doc. 154, at 3.) This Request sought "[a]ll Communications between You and any employee or agent of AgRisk Solutions regarding Wells, the Customer List, the Claims Files External Drive, and/or [Plaintiff's] Policyholders." (Doc. 154-5, at 9.) After raising certain objections, AgriSompo responded that "Defendants are not presently aware of any communications between anyone at AgriSompo and anyone at AgRisk Solutions other than email communications with and affidavit from Michael H. Scherer" from early 2026. (*Id.*, at 10.) Plaintiff continues that the response comprised the 34 pages produced by AgriSompo. (Doc. 154, at 5.)

According to Plaintiff, AgriSompo's statement was untrue, as evidenced by an email produced by non-party AgRisk in response to Plaintiff's subpoena and the deposition of its corporate representative in August 2026. (*See, e.g.*, Doc. 154-6, Exhibit 56 (December 2024 emails between Mike Scherer of AgRisk and Dan Hoffman, Jerod Dowell, Quinn Huhmann of AgriSompo referencing the possibility of "about $4.5 million" in "business moving" from Plaintiff to AgriSompo).) According to Plaintiff, "[a] host of other communications between AgRisk and AgriSompo followed on these topics; as such, there can be no doubt that AgriSompo's representation in its April 15, 2026[,] discovery responses was untrue." (Doc. 154, at 6.) On this basis, the timing and state of discovery materially limited Plaintiff's ability to investigate the proposed allegations by the May 26 motion to amend deadline.

The Court is not persuaded that AgriSompo's production of transfer forms, Plaintiff's processing of those forms, or the April 15 Scherer affidavit provided the same quality of information that Plaintiff was able to compile from AgRisk after the amendment deadline. While the earlier materials received from AgriSompo may have alerted Plaintiff to AgRisk's involvement, the proposed amendment clearly alleges more than AgRisk's participation in ordinary transfer processing. Instead, it alleges coordinated conduct between AgriSompo and AgRisk as well as improper interference by AgriSompo. Whether Plaintiff can ultimately prove those allegations is not the issue at the motion to amend stage. *See Carefusion*, 2010 WL 4004874, at *6 (finding "Defendants' arguments are better suited for resolution on a motion for summary judgment"). *See also Hollis v. Acoustic Sounds, Inc.*, No. 13-1083-JWL, 2013 WL 4768076, at *2 (D. Kan. Sept. 4, 2013) (permitting amendment and noting, "[t]o be clear, the undersigned is not ruling that these amendments will survive a later challenge under Rule 12(b)(6) or Rule 56. Rather, the undersigned is allowing the amendment. A comprehensive legal analysis and decision is deferred until a subsequent dispositive motion.").

Additionally, Plaintiff's diligence is established through the timing of events that occurred after the motion to amend deadline. Plaintiff conducted the relevant depositions in August and September 2026, received the final transcript on September 22, disclosed its intent to amend in the parties' September 25 Joint Status Report, discussed amendment with the Court during the September 28 telephone conference, and delivered the proposed pleading to Defendants that same day. The motion to amend was filed shortly thereafter on October 6, 2026. This sequence of events does not resemble the unexplained five-month post-deposition delay addressed in a case such as *Horocofsky*, 2026 WL 2673123, at *11.

The AgriSompo Defendants focus on the June 18, 2026, "keying in" email and Plaintiff's interrogatory responses of August 10, 2026. (Doc. 162, at 14.) Plaintiff's response to Interrogatory No. 14, which asked whether Plaintiff contends that "Defendants … caused any [Plaintiff's] Policyholder to not 'renew their contracts with [Plaintiff]' as described in Paragraphs 125 and/or 139 of your Complaint?" (Doc. 163-9, sealed, at 14.) Plaintiff's response included the following: "very recently obtained discovery shows that AgriSompo wrongfully interfered with … [Plaintiff's] contract with AgRisk by working with AgRisk over a multi-month period to recruit both Wells and [Plaintiff's] policyholders to move and transfer to AgriSompo." (*Id.*) According to Defendants, this establishes that Plaintiff "subjectively believed it had enough evidence to amend its complaint to add its new claims as of its August 3 deposition of Ag Risk's Mike Scherer, nearly two months before it served its proposed complaint." (Doc. 162, at 14.)

The Court is unpersuaded. A party need not amend immediately upon receiving potentially significant yet limited information if reasonably prompt follow-up discovery is necessary to determine its meaning and to determine whether amendment is warranted. Further, as discussed above, Plaintiff points out that as of this time, it was already pursuing the notice of other, related

depositions. (Doc. 171, at 5.) This also shows Plaintiff's diligence in working towards timely requesting the subject amendment.

The Court finds that Plaintiff made a reasonable decision to take depositions to put the discovery into context and to discover more facts that would allow it to determine whether it had a factual and legal basis to bring the proposed amendments. *See Carefusion*, 2010 WL 4004874, at *4 (holding that a plaintiff made a "reasonable decision to take the Rule 30(b)(6) deposition of Defendant … to put [a potentially significant] document into context and to discover more facts that would allow it to determine whether it had a factual and legal basis to bring the fraud and negligent misrepresentation claims."). "The Court cannot fault Plaintiff for waiting to file the motion until it had the opportunity to [conduct a deposition] in order to make a more informed decision about whether to bring these additional claims." *Id.* In the present situation, Plaintiff was justified to pursue related depositions, obtain the resulting transcripts, and promptly raise the issue of amendment after receiving the final transcript.

This conclusion is reinforced by the broader scheduling history in this case. Most major deadlines were extended by approximately five months, including discovery, the pretrial conference, and dispositive motions. Although those extensions did not include the amendment deadline, the extensions provide important context for assessing diligence and the practical effect of Plaintiff's requested amendment. Looking at the case as a whole, Plaintiff has adequately established that the May 26, 2026, motion to amend deadline could not reasonably have been met despite diligent efforts. As such, Plaintiff has established good cause under Rule 16(b)(4).

**III. Rule 15 Analysis.**

**A. Undue Delay.**

For similar reasons as discussed regarding the Rule 16 good cause standard, *supra*, the Court finds Plaintiff did not engage in undue delay in bringing the present motion per Fed. R. Civ. P. 15.

Delay alone does not compel denial – the delay must be undue. *Hirt v. Unified School Dist. No. 287*, 308 F.Supp.3d 1157, 1169 (D. Kan. 2018) (citing *Minter*, 451 F.3d at 1206).

To determine whether a party unduly delayed a request to amend, the Court must evaluate the stated reasons for the delay. *Id.* (citing *Minter*, 451 F.3d at 1206). When a party cannot provide adequate explanation for its delay, the "unexplained delay alone justifies the district court's discretionary decision" to deny leave to amend. *Minter*, 451 F.3d at 1206 (citing *Frank v. U.S. West*, 3 F.3d 1357, 1365–66 (10th Cir. 1993); *Durham v. Xerox Corp.*, 18 F.3d 836, 840 (10th Cir. 1994)). Requests for leave to amend have been denied "where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend." *Federal Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir.1987). That stated, lateness alone does not justify denial of a request to amend. *Hirt*, 308 F.Supp.3d at 1169 (citing *Minter*, 451 F.3d at 1206).

Simply stated, the Court considers the reason for the delay and whether the movant lacked an adequate explanation. Here, Plaintiff explains that it awaited the production of related documents and testimony from relevant witnesses Scherer, Dowell, and Huhmann before finalizing the proposed allegations. This provides adequate justification for Plaintiff's minimal delay in moving to amend.

As discussed above, the AgriSompo Defendants argue that Plaintiff had enough information by June 18, 2026 (receipt of the email concerning the alleged "keying in"), or, at the latest, August 3, 2026 (the Scherer deposition). The record shows, however, that from those dates until the present motion was filed, Plaintiff engaged in continued investigation rather than unexplained inactivity. *C.f. Horocofsky*. 2026 WL 2673123, at *11 (denying motion to amend when Plaintiff had no explanation for five months of inactivity prior to filing motion to amend).

Plaintiff noticed the Dowell and Huhmann depositions and obtained their transcripts on September 9 and September 22, 2026, and then raised amendment within days. Given the nature of

the allegations, the Court finds that it was reasonable for Plaintiff to engage in efforts to confirm the evidence through additional discovery and witness testimony before seeking amendment.

Plaintiff also asserts that the proposed amendment streamlines aspects of the case by removing Lindsey as a defendant. Although it adds factual detail and modifies certain theories, it does not represent an effort to begin an unrelated lawsuit within this action. The Court finds that the proposed amended allegations generally maintain the scope and nature of the operative pleading rather than finding them to be "radically altered" by the proposed amendment. *Acker v. Burlington No. & S.F. R. Co.*, 215 F.R.D. 645, 654 (D. Kan. 2003). The proposed amendments remain connected to the alleged movement of Plaintiff's confidential policyholder information and business to AgriSompo.

**B. Undue Prejudice.**

The AgriSompo Defendants have failed to establish that allowing the proposed amendment would result in undue prejudice to them. As the party opposing amendment, Defendants bear the burden of showing undue prejudice. *Rawlings v. Well Biz Brands*, No. 25-2141-EFM-ADM, 2026 WL 507332, *2 (D. Kan. Feb. 24, 2026) (citation omitted). The ordinary, practical burdens resulting from an amendment do not sufficiently establish undue prejudice; rather, the amendment must work an injustice. *Sithon Maritime Co. v. Holiday Mansion*, 177 F.R.D. 504, 508-09 (D. Kan. 1998).

Prejudice may be considered undue when amended claims concern an altogether different subject matter and raise significant new factual issues. *Minter*, 451 F.3d at 1208. As discussed above, however, the proposed allegations herein remain tied to the same general series of events: the alleged acquisition and use of Plaintiff's policyholder information, the transfer of Plaintiff's policyholders to AgriSompo, and the roles of Wells, AgriSompo, and AgRisk in those events. While the amended pleading expands and refines those allegations, it does not introduce an entirely unrelated

transaction. *See e.g. Acker*, 215 F.R.D. at 654 (allowing amendments that are related to the original claims, "and, thus, the scope and nature of this case has not been radically altered.").

The AgriSompo Defendants contend that the proposed amendment adds a distinct trade-secret theory concerning keyed customer information while changing the contractual relationship underlying Plaintiff's tortious-interference theory from policyholder agreements to the AgRisk agency agreement. (Doc. 162, at 12.) While these changes may necessitate that Defendants engage in additional discovery or adjust their stated defenses, the AgriSompo Defendants have not identified particular discovery it has been prevented from taking and has not shown that any necessary discovery could not have been completed under the existing schedule. In fact, after receiving Plaintiff's August 10, 2026, discovery responses, the AgriSompo Defendants served discovery on Plaintiff relating to keying-in and AgRisk. Plaintiff argues this indicates that these Defendants suffered no undue prejudice. (Doc. 171, at 5.)

As stated above, Plaintiff indicated its intention to seek leave to amend in the parties' Joint Status Report of September 25, 2026, Joint Status Report. (Doc. 147, at 2-3.) This was almost three weeks before the October 14, 2026, deadline for the parties to serve written discovery and some three and half months before the current January 12, 2027, deadline to conduct depositions, which has yet to expire. (*See* Doc. 149.) The dispositive-motion deadline is not until March 24, 2027. (*Id.*) Further, discovery concerning the alleged keying-in process was already underway before the proposed pleading was served, and the AgriSompo Defendants served additional discovery requests concerning keying-in and AgRisk issues in August 2026 and again in October 2026. These circumstances significantly reduce any likelihood of unfair surprise to Defendants or create an inability for them defend against these proposed amendments.

The Court recognizes that expert work had commenced by the time AgriSompo filed its opposition to the present motion. The existence of some additional expense or work does not,

without more, establish undue prejudice. "While any amendment invariably causes some 'practical prejudice,' undue prejudice means that the amendment 'would work an injustice to the defendants.'" *Carefusion*, 2010 WL 4004874, at *4 (citing *U.S. v. Sturdevant*, No. 07-2233-KHV-DJW, 2008 WL 4198598, at *3 (D. Kan. Sept. 11, 2008)). The present record does not show that amendment would work an injustice to AgriSompo.

**C. Bad Faith or Dilatory Motive.**

The Court also finds no sufficient evidence of bad faith or dilatory motive on the part of Plaintiff. The AgriSompo Defendants argue that Plaintiff is changing theories because its original claims are allegedly unsupported and describes the amended pleading as an attempt to make the case a moving target. (Doc. 162, at 18.) Plaintiff disputes that characterization and argue that the only "dilatory motives" have been on the part of the AgriSompo Defendants. (Doc. 171, at 6.) Plaintiff continues that these Defendants set forth improper objections to discovery, delayed producing documents in response to Plaintiff's discovery requests, caused the disqualification of the initial forensics expert agreed to by the parties, and "made misleading representations in discovery responses to hide the damning extent of its multi-pronged efforts to cause multiple parties (Wells and AgRisk) to breach their duties to [Plaintiff]." (*Id.*)

Plaintiff's decision to add a new claim and amend existing causes of action to include factual allegations that materially impact those claims in response to deposition testimony and documents received in discovery is not, standing alone, evidence of bad faith. Further, the timing does not suggest an effort to gain an unfair tactical advantage. Plaintiff disclosed the proposed amendment shortly after obtaining the final relevant transcript and while substantial time remained before the close of deposition discovery and the dispositive-motion deadline. The Court therefore determines that bad faith and/or dilatory motive on the part of Plaintiff has not been established.

**D. Futility.**

Finally, the AgriSompo Defendants contend that proposed Counts II, III, VII, and X are futile. A proposed amendment is futile only if it would fail under the standard governing a motion to dismiss under Rule 12(b)(6). *Anderson v. PAR Elec. Contractors, Inc.*, 318 F.R.D. 640, 642 (D. Kan. 2017). In applying that standard, the Court must accept the proposed pleading's well-plead factual allegations as true. *Id.* at 643. The Court therefore evaluates the sufficiency of the proposed claims as plead, not whether Plaintiff ultimately can prove them.

Proposed Counts II and III assert misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, and the Kansas Uniform Trade Secrets Act, K.S.A. 60-3320, *et seq.*, respectively. The claims are brought against all Defendants named in the proposed Amended Complaint. (*See* Doc. 154-1.) The AgriSompo Defendants argue that Plaintiff has not plausibly alleged ownership of the keyed-in information or that the information derives economic value from remaining secret. (Doc. 162, at 19.) They further contend that the new keying-in allegations and interference-with-contract claim undermine Plaintiff's original theory concerning the spreadsheet shared by Jami Wells because AgriSompo allegedly obtained policyholder information independently through AgRisk's keying-in activities. (*Id.* (citing Doc. 154-1, ¶¶ 75-77).)

Proposed Count VII asserts tortious interference with contract while proposed Count X asserts aiding and abetting a breach of fiduciary duty; both claims are brought against the AgriSompo Defendants only. (Doc. 154-1.) Defendants maintain that Plaintiff has not adequately plead that AgRisk breached either an agreement or a fiduciary duty. They also characterize entering information into an insurer's system as a common and lawful industry practice. (*Id.*, at 6.) They further contend that AgRisk's agreement did not create implied duties of loyalty restricting its ability to transfer Plaintiff's policyholders to AgriSompo. (*Id.*, at 20 (citing Doc. 154-1, ¶ 214).)

The undersigned finds that these arguments do not establish futility at the pleading stage. Resolution of these issues depends substantially on disputed factual premises regarding the

information's source, ownership, confidentiality, and economic value; the scope of the parties' contractual and fiduciary duties; customary industry practices; and the nature and purpose of the alleged communications and transfers. Resolving those disputes would require the Court to choose between competing factual accounts and assess the evidentiary merits of Plaintiff's allegations – tasks that are not part of the Rule 12(b)(6) inquiry applied under *Anderson*, *supra*.

Because, however, the arguments of the AgriSompo Defendants regarding Plaintiff's proposed amended pleading are at least partially based on disputed interpretations of factual issues, the Court finds that "any arguments Defendant[s] may have in opposition to the proposed amended complaint would be more effectively raised in a separate dispositive motion rather than indirectly under" a Rule 15 motion to amend.[5] *See Tomahawk Pipeline Constr., Inc. v. Hess Corp.*, No. 13-235-S, 2014 WL 12479473 (D. Wyo. Aug. 5, 2014) (citing *Pearl Brewing Co. v. Joseph Schlitz Brewing Co.*, 415 F. Supp. 1122, 1125 (S.D. Tex. 1976) (noting factual disputes typically cannot be decided on the pleadings and are improperly inquired into in the context of a motion to amend, particularly in view of the liberal rules regarding amendment of complaints). *See also Genberg v. Porter*, No. 11-2434-WYD-MEH, 2012 WL 1279936, at *3 (D. Colo. April 13, 2012) (holding that any futility argument would be more appropriately and efficiently raised in a dispositive motion rather than a motion to amend as it would avoid a "round of objections" to the district judge). Courts in the District of Kansas have come to similar conclusions. *See, e.g., Couser v. Somers*, No. 18-1221-JWB-GEB, 2020 WL 6742790, at *15 (D. Kan. Nov. 17, 2020), report and recommendation adopted in part *sub nom.*, No. 18-1221-JWB, 2021 WL 236080 (D. Kan. Jan. 25, 2021) (noting "Defendants will have the later opportunity to file summary judgment motions to further clarify the claims presented"); and *Watkins v. Genesh, Inc.*, No. 19-2486-JAR-GEB, 2020 WL 5993641, at *4 (D. Kan. Oct. 9, 2020) ("Exercising

---

[5] As the Court advised during the September 28 conference, futility arguments that substantially resemble a motion to dismiss often are more efficiently addressed after the amended pleading has been filed.

its discretion and recognizing Defendant will have an opportunity to challenge the sufficiency of the new claims through a later dispositive motion, the Court will not deny Plaintiff's proposed amendment based on futility").

The proposed pleading alleges that AgriSompo obtained confidential information concerning premiums paid by hundreds of Plaintiff's policyholders and that Defendants worked with AgRisk to enter confidential policyholder information into AgriSompo's system. It further alleges that AgriSompo induced or assisted AgRisk in breaching contractual and fiduciary obligations owed to Plaintiff. Accepting those well-plead allegations as true, as *Anderson* requires, *supra*, the Court cannot conclude at this stage that the challenged claims necessarily fail as a matter of law. Whether Plaintiff can substantiate those allegations with admissible evidence is properly reserved for later proceedings. In other words, the Court will not use a motion for leave to amend to resolve factual disputes, weigh evidence, or determine the ultimate merits of the proposed claims. *Carefusion*, 2010 WL 4004874, at *6.

On the present record, the AgriSompo Defendants have not shown that proposed Counts II, III, VII, or X would fail as futile under the governing Rule 12(b)(6) standard. Their futility objection, therefore, does not warrant denying Plaintiff's request for leave to amend.

**CONCLUSION**

Plaintiff has established good cause under Fed. R. Civ. P. 16(b)(4) by showing that the material basis for the proposed amendment was developed through discovery after the amendment deadline had expired. The Court finds that Plaintiff acted diligently under the circumstances in pursuing the relevant documents and deposition testimony. Factors considered under Fed. R. Civ. P. 15(a)(2) also favor amendment. Defendants have failed to establish undue delay, undue prejudice, bad faith, dilatory motive, or futility sufficient to overcome the liberal amendment policy under Rule 15.

**IT IS THEREFORE ORDERED** that Plaintiff's Partially Unopposed Motion for Leave to Amend Complaint (Doc. 154) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff shall file its proposed Amended Complaint, in the form attached to Plaintiff's motion, by **November 20, 2026**. Defendants are reminded of their 14-day answer deadline thereafter.

/S/Brooks G. Severson
Brooks G. Severson
U.S. Magistrate Judge